# AFFIDAVIT IN SUPPORT OF APPLICATION FOR SEARCH WARRANT

I, Linda D. Cisco, being duly sworn, depose and say:

1. I have been employed as a special agent with the Department of Housing and Urban Development (HUD), Office of Inspector General (OIG), since June 1999. In that capacity, I have participated in investigations relating to bank, mail and wire fraud, conspiracy to defraud the United States, theft of government property, false statements to the United States, and false claims against the United States. Since earning my certification as a Seized Computer Evidence Recovery Specialist (SCERS) in August 2000, I have served as the SCERS for the Mid-Atlantic District in addition to my general investigative assignments. As a SCERS, my duties encompass obtaining forensically sterile evidence images or mirror images of subject computers and computer media in order to search and analyze the electronic media for potential evidence and/or investigative leads. Prior to my employment with HUD OIG, I was employed with the Criminal Investigation Division (CID) of the Internal Revenue Service (IRS) from November 1991 until June 1999. I was a special agent with the IRS from December 1993 until June 1999 when I left the IRS to join HUD/OIG. During my employment with the IRS, I was involved with and supervised investigations pertaining to false, fictitious, or fraudulent claims against the United States, tax violations and currency structuring violations.

2. This affidavit is submitted in support of a search warrant for the property known as the Department of Housing & Urban Development Office of **Tracyee M. Martan**, ⎯⎯⎯⎯⎯⎯⎯⎯ Washington, DC, 20410. Your affiant has reason to believe that concealed within this office are the items contained in Attachment B, which constitutes the fruits, instrumentalities and evidence concerning violations of Title 18, U.S.C. Section(s) 1001 (False Statements to the Government), 1010 (False Statements to HUD), 1341 (Wire Fraud),

1343 (Mail Fraud) and 1344 (Bank Fraud). The statements contained in this affidavit are based on my experience, training and background as a Special Agent and a SCRES, as well as on information provided by other agents of HUD OIG, and other law enforcement officers.

3. HUD has employed **Tracyee Myshele Antonii Martan** for approximately the past two years. During this time she was assigned to the Office of Congressional and Intergovernmental Relations as program specialist and assistant to Deputy Assistant Secretary Mark A. Studdert. As part of **Martan** duties she had access to the personal client information housed on HUD computers, as well as information stored on Secretary Jackson's and several under Secretaries' computers and Blackberrys.

4. On June 28, 2006, HUD OIG Special Agent Jeffrey Lowery was contacted by United States Secret Service (USSS) Special Agent George Wahl relating to the arrest of **Martan** and an ongoing investigation into possible identity theft and bank fraud perpetrated by **Martan**. Wahl provided copies of the State of Maryland charging documents, which allege in part that on June 27, 2006, **Martan** was apprehended by the Laurel Police Department while attempting to pass a false, forged, altered and/or counterfeit cashier's check at the Laurel branch of the Bank of America. In addition, Wahl provided the results of a Federal Bureau of Investigation (FBI) fingerprint analysis based on the fingerprints taken from **Martan** on the day of her arrest, a NCIC criminal history for **Martan**, copies of Bank of America (BOA) cashier's checks numbers              and              and copies of **Martan** social security card, Maryland driver's license and HUD employee identification which were taken from **Martan** on the day of her arrest.

5. On June 27, 2006, **Martan** attempted to cash a BOA cashier's check, number              dated June 25, 2006, made payable to **Martan** and remitted by an individual

named John Bull for the amount of $5,000. On June 23, 2006, **Martan** successfully negotiated a similar check at the same branch which bank personnel now knew to be false, fraudulent and/or altered. The first check was a BOA cashier's check, number _____ dated June 20, 2006, payable to **Martan**, remitted by an individual named John Bull, in the amount of $5,000. **Martan** deposited all but $500 of this check into her BOA account _____ **Martan** received $500 cash back from this transaction.

6.  On June 27, 2006, when **Martan** attempted to negotiate the cashier's check, the bank personnel recognized **Martan** at which time she was detained and subsequently arrested at the branch by Detective D. Winstead, Laurel Police Department (LPD). At the time of her arrest **Martan** provided the name of **Tracyee Myshele Antonii Martin**. Upon an FBI finger print analysis, **Martan** was identified as **Tracey Martinez McDaniel**. This report also confirmed the aliases of **Tracyee M Antonii Martan, Tracyee Mysheler A. Martan, Tracey McDaniel, Tracyee Myshele Antonii Martan**, and **Tracey Martinez**. The subsequent NCIC criminal history showed a prior arrest on March 30, 1993, for felony embezzlement. **Martan** pled guilty on August 31, 1993, to a misdemeanor larceny charge in relation to this incident.

7.  At the time of her arrest, **Martan** provided a physical home address of _____ Washington, DC, 20017. A Maryland driver's license on **Martan's** person at the time of her arrest showed an address of _____ 177, Laurel, Maryland, 20707. Your affiant has determined from further investigation, which was confirmed by Wahl, that the Maryland address used on **Martan** driver's license is a post office box located at a United Parcel Service store front located in a Laurel shopping plaza.

According to LPD records, a complaint received by the Maryland State Police, which was referred to LPD for further investigation, alleges that a complainant reported an attempt was

made by someone to use his credit card without authorization by him to purchase some goods through a mail order system. The address used by the purchaser was 177, Laurel, Maryland, 20707.

After **Martan's** arrest she provided LPD and USSS consent to search her vehicle and her apartment in Washington. In addition, while in custody, **Martan** made several admissions about the fraud she was involved with, as well as stating that she conducted some of the activities in her office at HUD. On June 27, 2006, the consent search provided numerous boxes of consumer goods that were received at **Martan's** Maryland post office box which are believed to be the fruits of a credit card, bank fraud, identity theft scheme.

8.    On June 28, 2006, HUD OIG Special Agent Daniel Harding secured **Martan's** HUD office as well as the HUD owned computers which **Martan** had access to in order to prevent any further access by **Martan** to sensitive information. While in **Martan's** office, Harding noticed handwritten notes, passwords and telephone numbers in plain view on top of **Martan's** desk and credenza, which were unrelated to **Martan's** duties at HUD. These items included, but were not limited to, copies of United States Postal Money Orders, instructions for sending money via Money Gram with a code and reference number, an user ID and password for another HUD employee, Joshua Pemberton, and various post it notes with first names and four digit code numbers.

9.    Based on my training, knowledge and experience, and the training, knowledge and experience of other law enforcement agents who have handled these types of cases, I have been able to ascertain common characteristics concerning records that would contain evidence of violations of Title 18, United States Code, Sections 1001, 1010, 1341, 1343, 1344. These types of records are maintained as conventional business records, and as such, are maintained

over an extended period of time, including time periods long after any particular transaction or business agreement is completed. Among the records maintained are names, addresses, telephone records of associates and accomplices which are maintained in the form of rolodex, files, address books, appointment books, telephone message books, telephone bills, including records of long distance billing, computer files and daily calendars, financial records and other records included on Attachment "B". Such documents and records are kept not only in the individual's office, but also in the interior of premises, warehouses, in briefcases, safe deposit boxes, and document cases.

Based on the information contained in this affidavit, my training and experience, your affiant respectfully submits that there is probable cause to believe that **Martan** maintained records, both in paper form and stored on electronic media, containing names, banking information, account numbers, user identifications and passwords, as well as the items on schedule B, which constitutes the fruits, instrumentalities, and evidence of **Martan's** violation of Title 18, U.S.C., Section(s) 1001, 1010, 1341, 1343 and 1344.

Whereafter, it is respectfully requested that this Court issue a warrant authorizing the search of the **Martan's** HUD office described in this Application and Affidavit for Search Warrant.

Linda D. Cisco,<br>
Special Agent, HUD OIG

Subscribed and sworn to before me
this _____ day of _____, 2006.

United States Magistrate DEBORAH A. ROBINSON
District of Columbia         MAGISTRATE JUDGE

OIGM 3000 Appendix 8a

4

**Attachment A**

Description of Property to Be Searched

The property to be searched is an 8' x 10" (approximate) enclosed office space located on the 10th Floor of the Department of Housing and Urban Development headquarters Building,                    SW, Washington, DC, 20410 know as **Tracyee M. Martan's** office. The entrance door to the office is beige in color with silver hardware and is located directly across form the open cubical area of the suite. This door has no marking or lettering and is located doors to the left of the office door labeled "Deputy Assistant Secretary Mark Studdert".

**Attachment B**

Items to Be Seized

1. Any and all documents relating to financial transactions for **Martan**, any of her alias, or any other individual name locate in her office, to include wire transfers, loan applications, bank account information, credit card applications, monthly statement of accounts, wire transfer applications and advices, financial statements, correspondence to lending institutions and invoices.

2. Any and all documents relating to accounts receivable and accounts payable, including but not limited to, checks, invoices, credits, billings, bank statements, bank records, loans, financial statements, deposit slips, wire transfer applications and advises, certificates of deposit and monetary instruments, credit card statements and slips, safe deposit box rental and payment documents, safe deposit box keys, journals, ledgers, books, work papers, bills, investment accounts, notes, facsimile transmissions relating to the obtaining, transferring or secreting of money, credit cards and real estate transaction.

3. Any and all bank records, including, but not limited to, cashier's checks, money orders, loan applications, loan agreements, notes, certificates of deposit, payment records and delinquent payment records for **Martan**, her aliases, or any other individual name located in her office.

4. Any and all compensation records and all records of brokerage accounts, including, but not limited to, notes receivable, notes payable, stock certificates, account statements, cancellations, interest reports, dividend reports, account activity reports for **Martan**, her aliases, or any other individual name located in her office, including but not limited to, salary, commission and loans.

5. Any and all records validating identity, including but not limited to driver licenses, social security cards, birth certificates for **Martan**, her aliases, or any other individual name located in her office.

6. Any and all IRS forms to include Federal income tax returns, W-2s, and Form 1099 (dividend /interest) for **Martan**, her aliases, or any other individual name located in her office.

7. Any and all corporate kits, stock books, shareholder meeting minutes, stockholder agreements, articles of incorporation, and bylaws pertaining to the entities listed on Attachment C.

8. Any and all documents concerning income and/or commissions, earnings, payroll transactions, payroll documents, earnings, bank records and checks.

9. Any and all documents concerning partnership agreements, current and former partners, and current and former employees to include payroll receipts, financial statements, bank payroll records and Federal and state income tax fillings and returns.

10. Any and all documents relating to civil suits in which **Martan**, her aliases, or any other individual name located in her office was a party.

11. Computer and electronic equipment:
    A.  Any and all information and/or data stored in the form of magnetic or electronic coding on computer media or on media capable of being read by computer. These media include floppy disks, fixed hard disks, removable hard disk cartridges, tapes, laser disks, and other media capable of storing magnetic coding.

B.  Any and all electronic devices which are capable of analyzing, creating, displaying, converting, or transmitting magnetic or electronic computer impulses or data, including computer and computer components, monitors, hard drives and other computer-related electronic devices.

Unless otherwise stated, all of the above listed items to be seized shall have been created, acquired, or shall refer or contain information referring to the period January 1, 2004 until the present.

All of the above being evidence, fruits and instrumentalities of violations of Title 18, United States Code, Section 1001 (False Statements), Title 18, United States Code, Section 1010 (False Statements to HUD), Title 18, United States Code, Section 1341 (Mail Fraud), Title 18, United States Code, Section 1343 (Wire Fraud), Title 18, United States Code, Section 1344 (Bank Fraud).

The search procedure for the electronic data contained in computer operating software or memory devices, whether performed on site or in a laboratory, or other controlled environment, may include the following techniques:

a) Surveying various file "directories" and the individual files they contain (analogues to looking at the outside of a file cabinet for the markings it contains and opening a drawer believed to contain pertinent files);
b) Opening or cursory reading the first few "pages" of such files in order to determine their precise contents;
c) "Scanning" storage areas to discover and possibly recover recently deleted data.
d) "Scanning storage areas for deliberately hidden files, or performing key word searches through all electronic storage areas to determine whether occurrences of language in such storage areas exist that are related to the subject matter of the investigation.

This warrant and search procedure specifically excludes a search of any kind of unopened electronic mail. No search of unopened electronic mail shall be conducted unless a separate search warrant supported by probable cause is obtained.